**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| **EDWARD J. HOOKER, JR.**, | : | Case No. 18-20504 (JJT) |
| | : | |
| DEBTOR. | : | Re: ECF No. 12 |
| _____ | : | |

**RULING AND ORDER ON MOTION FOR RELIEF FROM**
**STAY TO SEEK FORECLOSURE COMMITTEE EXPENSES**

In the Motion for Relief from the Automatic Stay ("Motion", ECF No. 12) filed by Jonathan G. Cohen on behalf of the Committee of Sale ("Committee"), the Committee moves for stay relief under 11 U.S.C. § 362(d)(1), seeking to secure payment of legal fees and expenses ("Expenses") resulting from an abortive prepetition foreclosure sale in the foreclosure proceeding ("Foreclosure Proceeding") initiated against Edward J. Hooker, Jr. ("Debtor") and his property ("Property") by Santander Bank, N.A. ("Santander").[1] For the reasons stated herein, stay relief is granted.

I.  FACTUAL SUMMARY

Prior to the bankruptcy proceeding, the Hartford Superior Court appointed the Committee in the Foreclosure Proceeding. The Committee incurred expenses in connection with a court-

---

[1] The Motion specifically asserts "cause" claiming under Connecticut General Statutes § 49-25 that Santander is responsible for the payment of the Committee's Expenses, even if the foreclosure sale did not take place; that the Committee is entitled to relief from stay due to a lack of adequate protection; and that the Committee will otherwise suffer irreparable harm without the requested relief. *See* Mot. 1-2. The Committee asks this Court to permit it to seek payment of its Expenses from Santander in the Foreclosure Proceeding, Superior Court case *Santander Bank, N.A. v. Hooker, Jr.*, HHD-CV-176084127S. *Id.* at 3. The Motion does not explicitly address whether the Debtor will also be heard in the state court on the motion, what the binding effect of any such award in the Foreclosure Proceeding or the bankruptcy proceeding would be, or whether the payment would also effectively discharge the Committee from the Foreclosure Proceeding and thereby remove the Committee from the jurisdiction of that court. The aforesaid considerations are nonetheless implicated by the Motion and may affect the subsequent administration of the bankruptcy estate. In the interests of fairness and efficient judicial administration, these issues deserve the Court's consideration.

ordered foreclosure sale scheduled to be held on April 21, 2018. However, on April 3, 2018, the Debtor commenced this bankruptcy case by filing a petition for relief under Chapter 13 (ECF No. 1), staying the Foreclosure Proceeding. Therefore the foreclosure auction scheduled for April 21, 2018 was cancelled. In seeking permission to file a motion in the pending prepetition Foreclosure Proceeding, the Committee endeavors to secure payment of the Expenses incurred on behalf of Santander under Conn. Gen. Stat. § 49-25. The Affidavit of Expenses filed with the Committee's Motion outlines a balance of $4,369.00 due and owing to the Committee.[2] While no objection has been interposed to this Motion, both the unresolved state of the law and the Court's interests in clarifying the necessity for and scope of stay relief on this Motion and comparable motions has militated in favor of the issuance of a reasoned decision, as opposed to a summary order for relief.

II.    DISCUSSION

The Court must decide: (1) whether the automatic stay pursuant to Bankruptcy Code 11 U.S.C. § 362(a) is applicable to the Committee's Motion; (2) whether there is cause to grant relief; and (3) if so, the scope of relief to be granted under 11 U.S.C. § 362(d)(1).

A.  The Committee of Sale and its Expenses in Connection with a Foreclosure by Sale

The committee of sale consists of a court officer appointed by the court to conduct the foreclosure sale. *Piecuch v. Tasillo* (*In re Tasillo*), No. 14-21683, 2015 WL 78770, at *1 (Bankr. D. Conn. Jan. 6, 2015); Uniform Procedures for Foreclosure by Sale Matters, JD-CV-81, Rev. 3-14. The committee implements the judgment of foreclosure by sale and serves at all times "as an arm of the court". *Hartford Fed. Sav. & Loan Ass'n v. Tucker*, 13 Conn. App. 239, 252 (1988); *see also* Uniform Standing Orders for Foreclosure by Sale, JD-CV-79, Rev. 10-10.

---

[2] The Expenses were incurred for the preparation and sale of the property at issue in the Foreclosure Proceeding and include the legal fees and costs associated with this Motion. Each fee and cost is correspondingly allocated, bringing the grand total to $4,369.00. Mot. 6-7.

Under Connecticut law, a foreclosure sale need not occur in order for the committee to be entitled to compensation. *Tucker*, 13 Conn. App. at 250. The law provides in relevant part:

> "When the court in any such proceeding is of the opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a person to make the sale and fix a day therefor, and shall direct whether the property shall be sold . . . and how the sale shall be made and advertised; . . . If the plaintiff is the purchaser at sale, or if the property is redeemed at any time prior to the approval of the sale, or *if for any reason the sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and be taxed with the costs of the case.*"

Conn. Gen. Stat. § 49–25 (emphasis added). "Committee fees are a component of the expense of the sale. It is clear from the language of [Conn. Gen. Stat.] § 49–25 that it is *the plaintiff*, and not the defendant, that is [initially] liable for the expense of an aborted sale, which may then be taxed as part of the plaintiff's costs." *Norwalk v. Farrell,* 80 Conn. App. 399, 408 (2003) (citation omitted).[3]

Pursuant to the plain reading of the text of the statute, when a foreclosure sale does not occur, it is the plaintiff's initial financial burden to defray these expenses. In this case, that threshold financial responsibility accordingly falls on the shoulders of Santander. This process mitigates the committee's vulnerability to the vagaries of a bankruptcy case or a debtor's inability to pay these expenses.

B.  The Breadth of the Automatic Stay

In defining the automatic stay, 11 U.S.C. § 362(a)(1) provides in relevant part: "[A] petition filed under Section 301 . . . of this title . . . operates as a stay, applicable to all entities, of—

---

[3] This Court has surveyed the numerous rules regarding the taxing of costs, including committee expenses. Under Rule 54(d) of the Federal Rules of Civil Procedure, expenses besides attorney's fees "should be allowed to the prevailing party. . . . The clerk may tax costs on 14 days' notice." Fed. R. Civ. P. 54(d). Local Rule 54 dictates that a party requesting expenses files with the clerk of court a verified bill of costs within 14 days of the judgment that the clerk "shall" enter. D. Conn. L. Civ. R. 54(a). However, expenses of any named party to the action are not recoverable. *Id.* at 54(c)(7). Alternatively, the Connecticut Practice Book provides that costs may be taxed by the clerk within 14 days of the filing of a written bill of costs. Practice Book § 18-5. All three sets of rules contain provisions for objecting to the bill of costs.

>       the commencement or continuation, including the issuance or employment of process, of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the case under this title"

(emphasis added). The automatic stay also enjoins "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title". 11 U.S.C. § 362(a)(6).

Statutory interpretation always starts with the plain language of the text. *Universal Church v. Geltzer,* 463 F.3d 218, 223 (2d Cir. 2006). When engaging in statutory interpretation, courts should consider the language in the specific context in which it is used, as well as the broader context of the statute as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). If the statutory language is clear, the court's analysis must end there and enforce what the statute says on its face. *Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n,* 530 U.S. 1, 6 (2002).

The state court's approval of committee expense payment indirectly facilitates the recovery of a prepetition claim against the debtor through the continuation of judicial process in the pending foreclosure proceeding. Those expenses are awarded to the committee against the plaintiff, who can thereafter recover against the debtor or the debtor's property. It is clear from a plain text reading of the statute that an action for a claim that arose before the bankruptcy case started *or* a continuation of a judicial proceeding involving a claim against the debtor, must both be stayed upon the filing of a bankruptcy petition. Here, the Committee's sale was court-ordered prepetition and, thus, the Expenses associated with the sale, up to and including the costs incurred even if the sale did not take place, were expenses "that arose before the commencement" of the bankruptcy" and which undeniably will be recovered through the "continuation . . . of a judicial . . . proceeding"

in the Foreclosure Proceeding. *See id.* The mere fact that a mortgage lender like Santander will first defray the expenses ignores the procedural context of the committee's motion and the eventual consequence(s) to the debtor and the debtor's property.[4]

This Court has reviewed the published cases on whether the automatic stay does indeed apply to the payment of expenses to a committee of sale, including *Tasillo,* 2015 WL 78770, at *2 (holding that the automatic stay does not apply and, therefore, does not prevent the committee's prosecution of a motion in the foreclosure proceeding against the debtor's mortgagee for expenses incurred by the committee in an attempt to conduct a foreclosure sale); *In re VMC Real Estate, LLC,* No. 11-20452, 2012 WL 836724, at *2 (Bankr. D. Conn. Mar. 9, 2012) (holding that the state court order directing payment of committee expenses did not violate the automatic stay*)*; *In re Rubenstein*, 105 B.R. 198, 204 (Bankr. D. Conn. 1989) (holding that the automatic stay does not bar a committee from seeking the associated expenses from a non-debtor plaintiff); and *Equity One, Inc. v. Shivers,* 150 Conn. App. 745 (2014) (holding that the automatic stay prevents the state court from acting upon the committee's pursuit of expenses).

The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (quotation marks and citations omitted). "When a bankruptcy petition is filed, [11 U.S.C.] § 362(a) of the Bankruptcy Code provides an automatic stay of, among other things, actions taken to realize the value of collateral given by the debtor." *United Sav. Ass'n of Texas v. Timbers of*

---

[4] Upon the filing of a Chapter 13 bankruptcy petition, any pending foreclosure proceeding against the debtor and the property is stayed. With that, motion practice is stayed, discovery is stayed, securing a default against codefendants is stayed, and third party discovery is stayed. Accordingly, any undue emphasis on the third-party effect of a committee's motion, in order to specifically distinguish it from other motions in the pending foreclosure proceeding, ignores the boundary protections to debtors that were established under 11 U.S.C. § 362(a).

5

*Inwood Forest Assocs.*, 484 U.S. 365, 369 (1988). The Connecticut Supreme Court[5], relying upon the Report of the Commission on the Bankruptcy Laws of the United States, has also recognized that the automatic stay "provides a sanctuary from the jungle of creditors' pursuit of their individualistic collection efforts in order to safeguard [t]he primary function of the bankruptcy system ... to continue the law-based orderliness of the open credit economy in the event of a debtor's inability or unwillingness generally to pay his debts." *City of Bridgeport v. Debek*, 210 Conn. 175, 185 (1989) (quotations marks and citations omitted).

    *i.   The Committee's Right to Payment*

The Bankruptcy Court has the power to grant relief from the automatic stay. *See* 11 U.S.C. § 362(d) through (g). Aside from the limited exceptions listed in 11 U.S.C. § 362(b), the automatic stay "is extremely broad in scope" and applies "to almost any type of formal or informal action against the debtor or the [debtor's] property." *Krondes v. O'Boy*, 69 Conn. App. 802, 808 (2002) (citations omitted); *see also* 3 *Collier on Bankruptcy* ¶ 362.03(a), p. 362-23 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

While the breadth of the automatic stay is wide and a core protection of the debtor and the bankruptcy estate, it generally does not apply to proceedings against non-debtor parties. *See Rubenstein*, 105 B.R. at 201; *Plessey Precision Metals, Inc. v. Metal Ctr., Inc.* (*In re Metal Ctr.*), 31 B.R. 458, 462 (Bankr. D. Conn. 1983) ("The plain language of [S]ection 362 . . . clearly and repeatedly refers to actions against the debtor; it nowhere purports to encompass other related interparty claims"); *Smith v. Connecticut Student Loan Found.* (*In re Dino Smith*), 14 B.R. 956, 957-58 (Bankr. D. Conn. 1981). Where a nondebtor and debtor are so closely intertwined that a

---

[5] State courts have concurrent jurisdiction with bankruptcy courts to determine the scope of the automatic stay under 11 U.S.C. § 362. *See In re Ivani*, 308 B.R. 132, 135 (Bankr. E.D.N.Y. 2004); *In re Bona*, 124 B.R. 11, 15 (S.D.N.Y. 1991).

judgment against the nondebtor would bind the debtor, the automatic stay "*must* be extended" to the nondebtor. *Rubenstein*, 105 B.R. at 201-02 (emphasis added). *See also Metal*, 31 B.R. at 462. "The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287 (2d Cir. 2003). *See, e.g.*, *In re Residential Capital, LLC*, 529 F. App'x 69, 71 (2d Cir. 2013). In this context, however, the court does not need to posit whether the automatic stay applies to the nondebtor mortgage lender if the automatic stay enjoins the foreclosure proceeding against the debtor and the debtor's property.

Similar committee motions under 11 U.S.C. § 362(d)(1) of the Bankruptcy Code are regularly filed and are routinely granted by this Court, often without objection and for cause shown.[6] Such causes asserted include, for example, (1) that the committee expenses are modest and reasonable; (2) that there is no material impact on the estate; (3) that this is the proper, fair, and efficient process for the liquidation and allowance of the expense claim; (4) that the claim either advances or fails to interfere with the bankruptcy; (5) that the item is paid by a third-party; or (6) that it is simply unfair for the committee to wait for its payment during the debtor's bankruptcy. The Bankruptcy Code does not define "cause". Rather, courts are left to determine what constitutes "cause" based on the totality of the circumstances in each particular case. *Baldino v. Wilson* (*In re Wilson*), 116 F.3d 87, 90 (3d Cir. 1997). Whether there is cause, however, is only part of the analysis; an equally important issue is the scope of the order for relief. The bankruptcy court has the discretion whether to terminate, annul, modify, or condition the stay. *Matter of C & S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir. 1995).

---

[6] While committees might be mildly inconvenienced by the necessity of seeking relief from the automatic stay, the contest is straightforward, the motion process is accelerated, the orders are promptly entered, and the relief is rarely denied.

7

In examining the perceived incongruence of the judicial rulings on this subject, it is noteworthy that there are few genuine contests on this issue and consequentially there is thin briefing in cases on such motions. Further, these motions are often summarily granted in deference to the committee to facilitate the efficient judicial administration of the state court foreclosure proceeding.

The state court's award of committee expenses, upon criteria comparable to claims allowance in this Court, quantifies and pays the committee's claim and thereby irrefutably *triggers* the right of the foreclosing mortgage lender to secure reimbursement of that claim against the debtor through a subsequent bill of cost, or possibly otherwise.[7] Where that process is employed in the foreclosure proceeding, it is unmistakably the commencement of a step in prosecuting and determining a claim against the debtor or the debtor's property. This can impose an immediate adverse consequence on the debtor, whether the award is binding or merely probative in subsequent proceedings.[8] Therefore, a committee that moves to be paid these expenses in the foreclosure, without stay relief, inappropriately continues the foreclosure proceeding *against the debtor and his property* to recover a prepetition claim, even if the motion was ostensibly adjudicated only against the plaintiff mortgage lender. That is not a context in which the committee seeks its payment from the foreclosing plaintiff in a separate independent legal action. It is also

---

[7] Examples include a bankruptcy proceeding under 11 U.S.C. § 506(a) or a simple claim allowance hearing under 11 U.S.C. § 502.

[8] As stated in 46 Am. Jur. 2d *Judgments* § 551 at 713–714 (1969): "A judgment may be conclusive as against a third person who is liable over to the judgment debtor with respect to the cause of action adjudicated, at least *where there has been notice to the third person and an opportunity to defend*. This is true . . . whether the third person is liable over by express contract or by operation of law, *and whether the third person actually appears in the first action or not*." (emphasis added.) The Fourth Circuit Court of Appeals reasoned that: "The concept that notice plus an opportunity to defend render binding on an indemnitor the judgment in a case in which he did not participate springs from notions of res judicata. The reasoning is that where an indemnitor is notified and can take part in—indeed may control—the litigation, he is precluded from contesting the indemnitee's liability in the subsequent indemnity action. The indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee, thus forming the predicate for application of the rule that a litigant is entitled only once to his day in court." *Jennings v. United States,* 374 F.2d 983, 985–86 (1976). *See also Thomas v. Ferriss,* 113 Conn. 539, 155 A. 829 (1931) (applying principle of vouching in).

not an instance where such an award is of no financial or legal consequence to the debtor. Rather, it is the employment of judicial process to recover a prepetition claim against the debtor and the debtor's property.

As a matter of appropriate motion practice in this Court, and in cautious recognition of the scope of the automatic stay, only a request for relief from the automatic stay in the bankruptcy court properly and explicitly targets securing a ruling awarding the committee expenses, securing mortgage lender payment thereof, and appropriately tailoring the consequences of that award for the debtor and the debtor's property. These often routine motions, when viewed in the context of the pending foreclosure proceeding and the bankruptcy, can otherwise lack clarity about the movant's intention or ability to bind the debtor to such sum as an eventual taxable cost, or as a supplemental allowed claim of the mortgage lender.

This Court cannot ignore the fact that the Debtor is the party defendant in the Foreclosure Proceeding, with rights to be heard, and therefore risks being bound by *res judicata*, collateral estoppel, or *Rooker-Feldman* to the expenses awarded by the state court. If there was no bankruptcy pending, there is little doubt that such an award would so bind the Debtor. Unless a stay relief order explicitly addresses the binding effect on a debtor of a state court's ruling on a committee's motion for expenses, neither the state court nor the bankruptcy court can be confident about whether the ruling is also an inappropriate, or merely voidable, effort to bind the Debtor or whether the Committee Expenses will be re-examined later in the foreclosure proceeding or otherwise.[9]

While committee expenses in residential foreclosures are often modest, *bona fide*, and are best reviewed by the state court for reasonableness, the motion indirectly triggers or imposes, by

---

[9] It should be noted that if the Debtor cures its default on the mortgage payments or sells the property in the bankruptcy proceeding, or surrenders the property, the bill of costs will never be examined in further foreclosure proceedings.

virtue of Conn. Gen. Stat. § 49–25, ultimate liability upon the debtor and/or the debtor's property. Accordingly, the Motion's effect and consequence, created in the partial continuation of the Foreclosure Proceeding to recover a claim, are squarely within the ambit of 11 U.S.C. § 362(a)(1) and also likely violative of 11 U.S.C. § 362(a)(6).

Accordingly, this Court declines to join the decisions of its respected bankruptcy colleagues who have seemingly examined this issue from different contexts, but may not have been invited by the parties to scrutinize the contextual or consequential considerations addressed herein. The judicial gatekeeping functions and the balancing of fundamental bankruptcy protections regarding the potential hardships of claims against a debtor, weighed against the unfairness to a diligent and unpaid committee otherwise "caught" in the bankruptcy process, can only occur upon the bankruptcy court's examination of a committee motion and the crafting of the scope of relief under 11 U.S.C. § 362(a)(1). A ruling that might place scrutiny of these motions beyond the reach of the automatic stay, while expedient, invites judicial inefficiency, confusion, and possibly disparate results that undermine this Court's gatekeeper functions. Though not present in this case, there is the potential for excessive committee fees, untoward committee conduct, and/or inappropriately incurred expenses, and only a motion for relief and a judicially crafted order can achieve the requisite assessment sensitive to the scope of the automatic stay's fundamental purposes in service to the bankruptcy estate.

### III. CONCLUSION

In this context, practitioners in pending Connecticut judicial foreclosures are generally well advised to contemplate seeking stay relief and an order specifying the scope of appropriate relief for a committee seeking its expenses. The automatic stay's injunction applies to this Motion. In this instance, the Court nonetheless finds that the Committee has demonstrated cause to modify

the automatic stay to pursue its motion in the Hartford Superior Court for payment of its Expenses from Santander *and* to establish, for purposes of the foreclosure judgment and allowance in this bankruptcy case, the amount of Committee Expenses that may also be taxed later against the Debtor or the Property. The Debtor should, if appropriate, object and request an opportunity to be heard if he opposes the awarding of such Expenses, or risk being bound by the state court's ruling on such Expenses.[10] In the interests of justice and fairness, the Court waives the 14-day stay of its decision under Rule 4001(a)(3) of the Federal Bankruptcy Rules.

**IT IS SO ORDERED** in Hartford, Connecticut on this 27th day of June 2018.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[10] It is neither sensible, practical, nor judicially efficient to leave this issue for hearing in either court potentially months or even years later in a bill of costs contest when the Committee may be long-gone, discharged, or in a bankruptcy claim allowance process that would also examine the reasonableness of the expenses claimed.